FILED IN THE
UNITED STATES
BANKRUPTCY COURT

AUG 20  4 24 PM '99

Bruce R. Zirinsky
Mark C. Ellenberg
Peter M. Dodson
CADWALADER, WICKERSHAM & TAFT
1333 New Hampshire Ave., N.W.
Suite 700
Washington, DC 20036
Telephone (202) 862-2200

and

100 Maiden Lane
New York, NY 10038
Telephone (212) 504-6000

Ralph R. Mabey (2036)
Steven J. McCardell (2144)
Steven C. Strong (6340)
LEBOEUF, LAMB, GREENE
& MACRAE L.L.P.
136 South Main Street #1000
Salt Lake City, Utah 84101
Telephone (801) 320-6700

Attorneys for the Debtor and Debtor in Possession

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re ) | |
| ) | Bankruptcy Case No. 99-21130 |
| GENEVA STEEL COMPANY, ) | (Chapter 11) |
| ) | |
| Debtor and Debtor in Possession. ) | |
| Tax ID #93-0942346 ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S MOTION TO APPROVE AMENDED KEY EMPLOYEE RETENTION PROGRAM

### I.  Introduction

Geneva Steel Company ("Geneva") respectfully submits this memorandum in support of its motion for approval of an amended key employee retention program for six senior executives and 30 managers ("Amended Retention Program"). The Amended Retention Program, like the original program, consists of a severance policy for the senior executives and an emergence bonus for all eligible employees. The Amended Retention Program, however, reflects certain modifications

14549.1

349

agreed to by Geneva during discussions with the United Steel Workers of America ("Union") in early August. Those modifications implement several of the changes to the original program suggested in the Court's Order dated July 20, 1999 ("Order"), which denied without prejudice Geneva's motion for implementation of the original key employee retention program.

The Court withheld its approval of the original retention program under the business judgment test on the grounds that Geneva's management had not consulted with the Union prior to formulating the details of the program and that approval of the retention program might jeopardize Union support for Geneva's reorganization process. The Court suggested that Geneva consult with the Union and consider making the following changes to the plan: (1) severance benefits triggered after a conversion to Chapter 7 would have Chapter 11 administrative priority instead of Chapter 7 administrative priority; (2) the six-month severance benefit would be mitigated by income earned from new employment during the six months following separation from Geneva; (3) the emergence bonus for senior executives would be paid entirely in stock; and (4) confirmation of a liquidating plan would not trigger the emergence bonus.

During early August, the Company held discussions with the Union regarding modifications to the original key employee retention program. As a result of those discussions, the Company has formulated the Amended Retention Program. Under the Amended Retention Program: (1) severance benefits triggered after a conversion to Chapter 7 would have Chapter 11 administrative priority instead of Chapter 7 administrative priority; (2) the six-month severance benefit would be mitigated to the extent of any emergence bonus paid but would not be mitigated by income earned from new employment during the six months following separation from Geneva; (3) the emergence bonus for senior executives would be

paid half in stock and half in cash; and (4) confirmation of a liquidating plan would trigger the emergence bonus.

Geneva is prepared to implement the foregoing program with the additional modification that the emergence bonus for senior executives would be paid entirely in stock if the Court, after consideration of this motion and the entire record, determines that payment entirely in stock should be mandatory. However, Geneva's Board nevertheless believes in its business judgment that paying the emergence bonus entirely in stock is not in the best interest of the estate. Payment entirely in stock would pressure the recipients to sell all or part of such stock soon after emergence to pay taxes. Such a sale would send the wrong signal to the market concerning Geneva's future prospects and potentially place downward pressure on the stock.

## II.   The Retention Program Is Within Geneva's Sound Business Judgment

The Court concluded that Geneva's management should have consulted with the Union prior to formulating the original retention program.[1] Geneva has consulted with the Union after entry of the Order concerning the specifics of the retention program and has made amendments to accommodate Union concerns. The Union does not oppose the Amended Retention Program and Geneva respectfully submits that the Amended Retention Program is within its sound business judgment for the reasons set forth below.

## III.   Severance payments should be mitigated only to the extent the recipient has already been paid an emergence bonus

Geneva has modified the retention program to provide that severance payments for senior executives will be mitigated to the extent the recipient has already been paid an emergence bonus.

That will prevent a senior executive who is terminated shortly after substantial consummation of a plan of reorganization from receiving double payment under the plan.

Mitigation based on salary received from alternate employment during the severance payment period, however, is unnecessary and undesirable. The argument for such mitigation rests on the assumption that the sole purpose of severance payments is to replace lost income during the severance payment period. The proposed severance plan, however, serves an additional purpose for Geneva. Some of Geneva's senior executive have job opportunities today that could provide better total compensation than opportunities that may be available upon an involuntary termination of employment at a later date, even if the immediate cash compensation is comparable to the executive's current cash compensation.[2] Moreover, if a senior executive subsequently accepts a position at less than the current cash compensation, a severance payment reduced by current earnings would only equalize the executive's compensation for six months. The severance payments in the Amended Retention Plan provide senior executives with a financial incentive not to accept job offers today, even though Geneva is in bankruptcy.

Moreover, there is nothing unusual about the proposed severance plan for senior executives. It would be very unusual for a severance plan in Chapter 11 to require mitigation when the severance payments involved last for fewer than eighteen months.[3] Moreover, Geneva's prepetition severance plans did not require mitigation in a similar context. For example, Geneva's Exempt Employee Severance Plan does not require mitigation, unless the employee is re-employed

---

[1] Geneva did, in fact, consult with the Union prior to seeking approval of the retention program, but, at that time, the Union declined to discuss the specifics of the program.

[2] At the hearing on this motion, Geneva is prepared to present testimony to this effect, if necessary.

by Geneva during the period covered by severance pay.[4] Similarly, Geneva's severance provisions for executives never have required mitigation.[5] A program designed to encourage continued employment in a period of great uncertainty should not be less attractive than the historic norm.

## IV. Paying Half the Emergence Bonus in Cash Serves A Legitimate Business Purpose

The Amended Retention Program still provides that the emergence bonus for senior executives will be paid half in stock and half in cash instead of being paid entirely in stock as the court suggested. Geneva's board carefully considered the decision to pay half of the emergence bonus in cash and approved the provision for sound business reasons. The award of stock is taxable income to the recipients. The partial cash payment was designed to provide senior executives with the funds necessary to pay the tax on the emergence bonus without pressuring them to sell all or part of their stock shortly after Geneva's reorganization. Such sales would put downward pressure on Geneva's stock and would send the wrong signal about Geneva's prospects to the financial markets.

Geneva therefore submits that the payment of half of the emergence bonus for senior executives in cash is within its sound business judgment. Geneva is, however, prepared to implement a retention program that pays the emergence bonus for senior executives entirely in stock if the Court determines that payment entirely in stock should be mandatory. However,

---

[3] Transcript at 24-25 (Testimony of Timothy Coleman). <u>See also,</u> Supplemental Affidavit of Timothy Coleman, attached as Exhibit A.

[4] Severance Agreement and Release (Exempt) ¶ 6. A copy of the agreement is attached to Geneva's Reply to objections to the retention program.

[5] At the hearing on this motion, Geneva will present testimony with respect to Geneva's severance provisions for executives.

-5-

Geneva's Board does not believe that paying the bonus entirely in stock is in the best interest of Geneva's estate.

## V. Payment of the emergence bonus upon the consummation of a liquidating plan serves a legitimate business purpose.

The principal purpose of the emergence bonus is to give key employees a financial incentive to remain at Geneva through the end of the case. It is not designed to incentivize any particular outcome. The purpose of the plan would be substantially undercut if the emergence bonus were not payable upon the consummation of a liquidating plan. The need for a retention incentive is strongest when a liquidating plan is a possible outcome. The Amended Retention Program therefore provides that the emergence bonus will be paid upon the consummation of a liquidating plan. In the event that a liquidating plan results in the termination of the senior executives, however, any emergence bonus paid to the senior executives will be credited against payments due under the severance plan for senior executives.

Geneva submits that the payment of an emergence bonus upon the substantial consummation of a liquidating plan of reorganization is within its sound business judgment. The Creditor's Committee has advised the Company that a liquidating plan in which Geneva is sold to a third party might provide the greatest return to creditors and that management should keep an open mind with respect to such a plan. The retention program should not be structured to give Geneva's key employees a disincentive to work for the consummation of a liquidating plan, if otherwise appropriate.

## VI. The Amended Retention Program Has the Support of Geneva's Creditors and is not opposed by the Union

Neither the Bondholders Committee nor the Committee of Unsecured Creditors opposes the retention program. Indeed the Bondholders' Committee made a strong statement in support of the motion at the June 23, 1999, hearing. The position of Geneva's official creditors committees is entitled to considerable deference. It is essentially their money that is being spent.

In addition, Geneva has consulted with the Union in accordance with the Court's suggestion. The Union has advised Geneva that it does not oppose the Amended Retention Program. Thus, there is no reason to believe that approval of the Amended Retention Program would jeopardize Union support of Geneva's reorganization process.

## VII. Conclusion

Based on the foregoing, Geneva requests entry of an order approving the Amended Retention Program on the terms set forth above. Should the Court determine that payment of the emergence bonus for senior executives must be made entirely in cash, Geneva requests approval of the Amended Retention Program with that additional modification.

-7-

Dated this 20th day of August, 1999.

                                */s/ Ralph R. Mabey*

Ralph R. Mabey (2036)
Steven J. McCardell (2144)
Steven C. Strong (6340)
LEBOEUF, LAMB, GREENE
& MACRAE L.L.P.
136 South Main Street
Salt Lake City, Utah 84101
(801) 320-6700

- and -

Bruce R. Zirinsky
Mark C. Ellenberg
Peter M. Dodson
CADWALADER, WICKERSHAM & TAFT
1333 New Hampshire Ave., N.W.
Suite 700
Washington, DC 20036
(202) 862-2200

and

100 Maiden Lane
New York, NY 10038
(212) 504-6000

Attorneys for Geneva Steel Company, Debtor and Debtor-in-Possession

-8-

## CERTIFICATE OF SERVICE

I certify that on August__, 1999, I caused a true and correct copy of the foregoing memorandum to be served by United States First Class mail, postage prepaid, upon those parties appearing on Master Service List No. 13, dated August 20, 1999, on file with the United States Bankruptcy Court for the District of Utah.

*Laurie Janner* (signature)